# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

RASHAUD JOHNSON,            )
                           )
        Movant,            )
                           )
v.                         )      Case No.    CV410-256
                           )                  CR408-315
UNITED STATES OF AMERICA,   )
                           )
        Respondent.        )

# REPORT AND RECOMMENDATION

Rashaud Johnson moves for 28 U.S.C. § 2255 relief. (Doc. 1.[1]) For the following reasons, his motion should be denied.

## I.   BACKGROUND

A federal grand jury charged Johnson with participation in a massive drug conspiracy involving, *inter alia*, multiple kilograms of cocaine and marijuana. (Cr. doc. 3.) He pleaded guilty to a lesser included offense of the count one conspiracy -- conspiracy to possess with intent to distribute and to distribute an *unspecified* quantity of cocaine.

---

[1] Unless otherwise noted, citations are to the docket in Johnson's civil case, CV410-256. "Cr. doc." refers to documents filed under his criminal case, CR408-315. Additionally, page references are to the CM/ECF screen page rather than the referenced document's own internal pagination.

(Cr. docs. 392 & 859 (plea agreement).) The trial judge accepted Johnson's plea and sentenced him to 142 months' imprisonment. (Cr. docs. 880 & 1016.) Johnson appealed, challenging the sentence, but the Eleventh Circuit affirmed, finding no error. *United States v. Johnson*, 382 F. App'x 856 (11th Cir. 2010). Thereafter, he filed the instant § 2255 motion, asserting the following grounds for relief:

(1) appellate counsel performed deficiently by failing to raise the sentencing judge's improper consideration of the 18 U.S.C. § 3553(a) factors;

(2) sentencing counsel performed deficiently by failing to properly inform him of the scope of the Probation Office's Presentence Investigation Report ("PSI");

(3) sentencing counsel performed deficiently by failing to object to the attributed drug amount; and

(4) his plea was involuntary because he cannot read.

(Doc. 1 at 3-14.)

## II. ANALYSIS

The Court will address Johnson's claims out of order, by analyzing his Ground 4 claim that his plea was "unintelligent, unknowing, and involuntary," prior to analyzing his ineffective assistance of counsel claims, Grounds 1, 2, and 3.

## A.    Johnson's Plea

In Ground 4 of his petition, Johnson directly attacks his guilty plea. (Doc. 1 at 10-14.)  He states that his plea was "unintelligent, unknowing, and involuntary" (i.e., he was both incompetent to enter a plea and the plea was involuntary) since he is illiterate.[2]  (*Id.* at 10-12; *see also id.* at 15-16 (affidavit stating that he cannot read).)  In addition, he suggests that his attorney, John Sugrue, coerced him to enter into the plea by telling him to sign the plea agreement and agree to everything the judge asked at the Fed. R. Crim. P. 11 change of plea hearing.[3]  (*Id.* at 12.)  He

---

[2] Notably, Johnson has lied either now or during his plea colloquy.  During the Rule 11 plea hearing, he answered "yes" when asked whether he could "read, write, and understand the English language."  (Cr. doc.  1015 at 5-6.)  He now contends that he is entirely illiterate.  (Doc. 1 at 10, 14.)

[3] As is true of many § 2255 movants, Johnson drifts from the realm of permissible into the impermissible by arguing that the government's evidence was insufficient to convict him of conspiracy.  (Doc. 1 at 12-14.)  Since he pleaded guilty, that argument is waived and thus is out of bounds here.   *E.g., United States v. Ternus*, 598 F.3d 1251, 1254 (11th Cir. 2010) (citing *United States v. Viscome*, 144 F.3d 1365, 1370 (11th Cir. 1998)).  By entering his plea, he relieved the government of any need to present such evidence.  Consequently, he cannot now argue that the government lacked sufficient evidence to establish his guilt.

In any event, his assertion that "his arrest was an isolated incident of an attempt to purchase cocaine" is flat out false.  The record shows that he purchased more than *three kilograms* of cocaine from the other conspirators over a several month period.  (PSI ¶¶ 9-12, 14.)  Too, in a written statement (apparently prepared by his attorney), he explains:

also claims that Sugrue duped him by promising him that he would face a 10-year maximum sentence. (*Id.* at 11.)

Johnson's alleged illiteracy and general lack of formal education did not render him incompetent to enter a plea. (*Id.* at 10 n. 4.) If that were the case, no illiterate or uneducated defendant could ever gain an advantage by negotiating a favorable plea agreement. And Johnson himself would be absolutely barred from receiving an acceptance of responsibility sentencing adjustment because the Court could not accept his plea. Certainly the Constitution would not require courts to further punish the uneducated by creating a presumption that their admissions cannot be credited, even where they freely admit guilt and seek

---

In early June 2008, I bumped into Telly Petty at a shoe store. I spoke to him, we talked a while, and that's when he told me that he had some "powder." I told him I didn't have any money and that's when he told me he would do something for me. He bought me a new pair of shoes and gave me his phone number. When later we met he gave me an "ounce" and said get on your feet. I called my friends and we got high. . . . I needed money so I got with some friends who had money and told them about Telly, since they didn't know him, they wanted me to deal with him. So I started dealing with Telly to get half a kilo for them and they would pay me for getting it and bringing it back. On August 29, 2008, after many phone calls to Telly, he agreed to sell me half a kilo and instructed me to bring the money to his car parked in the Kroger parking lot. There I was met by CNT agents and others who arrested me.

(PSI ¶ 17.) Far from an isolated event, the record shows that Johnson dealt cocaine for Petty on a regular basis. By his own repeated admissions, Johnson participated in a drug conspiracy with Petty and others.

sentencing lenience. Indeed it does not do so. Many thousands of illiterate and uneducated defendants have managed to enter sound pleas. So long as a defendant is mentally competent and enters a plea voluntarily and intelligently, the Constitution is satisfied.

"The legal standard for mental competency . . . is that [a] defendant has sufficient present ability to consult with his or her attorney with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings against him or her." *United States v. McDowell,* 2006 WL 3837490 at *1 (M.D. Fla. 2006); *see also Godinez v. Moran*, 509 U.S. 389, 396 (1993); *Dusky v. United States*, 362 U.S. 402 (1960). While Johnson cursorily states that he did not have "the ability to comprehend the nature of the charges surrounding the guilty plea proceedings," the record cuts against him. The judge that accepted his plea questioned him in detail about his current mental state and his understanding of the case, the plea agreement, and charges against him. Johnson did not hesitate or stumble through the proceeding. He gave direct answers that were responsive to the judge's questions. (Cr. doc. 1015 at 3-27.) Aware that

Johnson had dropped out of school, the judge, through his questioning and observations, still found him to be competent, explaining:

> The defendant is not suffering from any obvious physical difficulty. The Court has observed his appearance, his alertness, his awareness, and has considered his answers to my questions. And he has been made fully aware of the significance of this proceeding. The Court finds that the defendant is in full possession of his faculties. He is not under the influence of any pain medication. He is not under the influence of any alcohol or drugs.
>
> As he stands before the Court today, I am confident that he understands the substance and meaning of the charges, the consequences of his plea, and the facts which the government must prove, and which by his plea of guilty he admits all of the essential elements of the offense.
>
> He has had a competent lawyer whom he . . . has met with on several occasions. He says that he is satisfied with the representation of his lawyer. The Court finds that Mr. Sugrue, the lawyer, has discharged his duties to the defendant consistent with the standard required.
>
> In the Court's opinion this defendant has engaged in this proceeding with intelligence and competence, and he has offered his plea of guilty as a matter of his own free choice.

(*Id.* at 19-20.) Absent some evidence to the contrary -- something more than his conclusory assertion that the finding was wrong -- movant's challenge fails. *See Caderno v. United States*, 256 F.3d 1213, 1217 (11th Cir. 2001) (citing *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir.

1991)); *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (no hearing required on claims "which are based on unsupported generalizations"); *Rodriguez v. United States*, 473 F.2d 1042, 1043 (5th Cir. 1973) (no hearing required where petitioner alleged no facts to establish truth of his claims beyond bare conclusory allegations).

Next, Johnson's illiteracy did not undermine the voluntariness of the plea. As explained by the government, a defendant need only understand the nature of the charges, the consequences of the plea, and be free of coercion. *United States v. Moriarty*, 429 F.3d 1012, 1019 (11th Cir. 2005). Here, the Rule 11 judge carefully explained Johnson's rights (cr. doc. 1015 at 7-10; cr. doc. 1086), the charges against him (cr. doc. 1015 at 12-13), the maximum potential sentence of 20 years (*id.* at 14), the terms of the plea agreement (*id.* at 17-18), and repeatedly asked whether Sugrue or anyone else had pressured him into entering the plea, to which he steadfastly and repeatedly answered "no." (*Id.* at 18, 19, 20.) The Court's questions and Johnson's sworn responses undercut his more recently minted objections. Johnson's plea declarations "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).

Indeed, in cases like this one, where "the Rule 11 plea-taking procedure is careful and detailed, the defendant will not later be heard to contend that he swore falsely." *United States v. Stitzer*, 785 F.2d 1506, 1514 n.4 (11th Cir. 1986) (affirming district judge's denial of a defendant's motion to withdraw his guilty plea). Consequently, the Court does not credit Johnson's assertions that he was unduly pressured into entering the plea by his attorney. The record shows that Johnson knowingly and voluntarily entered into his plea.

Next, while Johnson did not frame Ground 4 as raising ineffective assistance of counsel claims, for the sake of thoroughness, the Court will analyze his aspersions against Sugrue -- that he coerced Johnson to plead guilty and lied about the possible sentencing exposure -- under the ineffectiveness rubric. The Court is guided by *Hill v. Lockhart*, 474 U.S. 52 (1985), which applied the *Strickland v. Washington*, 466 U.S. 668, 687 (1984), two-part test for determining whether counsel performed ineffectively in the plea context. Where a movant enters a plea of guilty and then collaterally challenges it as involuntary due to constitutionally deficient representation, he must first demonstrate that his attorney's

performance was deficient, which requires a showing that counsel's advice regarding the plea was outside the "range of competence demanded of attorneys in criminal cases." *Hill*, 474 U.S. at 56 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)); *see Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Then he must demonstrate that the defective performance prejudiced the plea process to such a degree that the plea cannot be trusted. *Hill*, 474 U.S. at 59. To meet the prejudice prong in this context, Johnson must show that there is a reasonable probability that but for counsel's errors he would not have pled guilty and would have insisted on going to trial. *Id.*

As the Court explained above, the judge at the Rule 11 proceedings spent some time determining whether Sugrue had applied untoward pressure upon Johnson in their plea discussions. Johnson, under oath, told the judge that Sugrue had not coerced him to plead guilty. (Cr. doc. 1015 at 18, 19, 20.) When asked whether he was "pleading guilty freely and voluntarily," he responded "[y]es, sir." (*Id.* at 20.) Also, the judge carefully explained Johnson's sentencing exposure:

> Q The maximum sentence that the Court could impose, Mr. Johnson, would be a sentence of imprisonment of not more than 20

years; a fine of up to one million dollars; supervised release of at least three years; and a one hundred-dollar special assessment. These are the maximum statutory penalties, but the Sentencing Guidelines that were made effective as of November 1, 1987 will be considered by the Court in an advisory manner when deciding upon the appropriate sentence in your case. Do you understand that?

A Yes, sir.

Q Has your lawyer gone over the guideline information with you?

A Yes, sir.

Q Have you tried to learn in your discussions with your lawyer how the guidelines could affect the sentence in your case?

A Yes, sir.

Q Do you fully understand that the Court is going to consider the guideline ranges as advisory when deciding upon your sentence?

A Yes, sir.

Q Do you understand that what your lawyer has told you about the sentence that you may receive is only a guess or an estimate based upon what you have told him about what you have done, and what he has been able to learn from the government?

A Yes, sir.

Q Do you understand that the Court is not bound by that estimate?

A Yes, sir.

Q The sentence that you receive may not be what your lawyer has estimated it to be, because at this time neither you, your lawyer, the probation office, the Court, nor anyone else knows exactly what your sentence will be. Do you understand that?

A Yes, sir.

Q In certain limited ways the Court has a right to depart from the guidelines, downward and upward. And you will have a right to appeal the sentence, and the government will have a right to appeal the sentence. Even though you have a plea agreement with the government, I want to make it clear that I am unlikely to sentence you outside of the range of your advisory guidelines.

Any recommendation from the government will be considered by the Court, but the Court is not bound by a government recommendation. Do you understand that?

A Yes, sir.

Q Even though your sentence may be more severe than you or your lawyer have anticipated, you are still bound by your plea of guilty and you may not withdraw it. Do you understand that?

A Yes, sir.

(*Id.* at 14-16.) Finally, the judge asked whether Sugrue had "told [him] the exact sentence that will be imposed," and Johnson answered "[n]o, sir." (*Id.* at 19.)

Based upon the sworn testimony at the plea hearing, the Court is satisfied that Sugrue did not coerce Johnson or make any promises as to

sentencing exposure. Johnson's affidavit, which states that Sugrue promised him that he "would receive no more than a 10 year sentence" is entirely unbelievable. (Doc. 1 at 15.) But even if the Court credited Johnson's dubious assertion, he still cannot show prejudice. The judge clearly explained Johnson's sentencing exposure and advised him that it was not bound by any sentencing estimates. Moreover, Johnson has not even suggested that he would not have entered a plea of guilty had circumstances been otherwise. That is, he has not offered any evidence or argument showing that he would not have entered a plea had he been fully and accurately advised of the plea agreement's details by his attorney.[4]

---

[4] Johnson also claims that Sugrue was ineffective for failing to investigate the facts of the case. (Doc. 1 at 14.) Based upon the investigation, movant contends, Sugrue would have learned that Johnson was a bit player who did not conspire with Petty or others to distributed drugs. (*Id.* at 12-14.) The claim is preposterous. Johnson freely admitted to his pretrial services officer and the Court that he *did* participate in the drug conspiracy. (PSI ¶ 17; cr. doc. 1015 at 21-26.) He contacted Petty to purchase large quantities of cocaine for his "friends." The fact that he did not know any of Petty's sources or participate in the broader scheme is irrelevant. A person convicted of conspiracy need not know of or participate in *all* details of the conspiracy. It is enough that he knew the essential nature of the conspiracy and manifested his agreement to participate in it. *United States v. Cooper*, 203 F.3d 1279, 1286 (11th Cir. 2000); *United States v. Payne*, 750 F.2d 844, 859 (11th Cir. 1985). Johnson, by his own admission, conspired to distribute cocaine. His participation in all details of the conspiracy was a question for sentencing, where the district judge must assess each defendant's level of culpability based upon their participation in the offense. *See, e.g., United States v. Baptiste*, 335 F. App'x 15, 19-20 (11th Cir. 2009).

## B.     Remaining Ineffectiveness Claims

Johnson raises three additional ineffective assistance of counsel claims -- Grounds 1, 2, and 3.   The Court will address his sentencing claims, Grounds 2 and 3, prior to examining his appellate-counsel ineffectiveness claim.

In analyzing all three claims, the Court is guided by a

---

Based on the record, it is clear that Sugrue did not perform deficiently by failing to further investigate the case.

And as with Johnson's other ineffectiveness claims, even if Sugrue *did* perform deficiently, the claim still fails because he has not shown prejudice.  Johnson had the chance to back out of the plea but chose not to do so, even after the Court *carefully* detailed the elements of a conspiracy charge:

> Q     If you should elect to go to trial in this case, before you could be found guilty on Count 1, Mr. Johnson, the government would first have to prove that two or more persons in some way or manner came to a mutual understanding to try to accomplish a common and unlawful plan as charged in the indictment that I just read to you.  The government would also have to prove that you, knowing the unlawful purpose of the plan, willfully joined in it.   And the government would have to prove that the object of the unlawful plan was to possess with intent to distribute and to distribute cocaine hydrochloride.
>
> The government would have to prove each of those elements beyond a reasonable doubt to the satisfaction of a fair and impartial jury before you would be authorized to be convicted.  Do you understand that?
>
> A  Yes, sir.

(Cr. doc. 1015 at 13-14.)  Finally, Johnson never suggests that he would not have pled guilty if not for Sugrue's failure to investigate.

straightforward application of *Strickland*, 466 U.S. 688. Johnson first must demonstrate that his attorney's performance was deficient, which means showing that his "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687. Second, he must demonstrate that the defective performance prejudiced the defense to such a degree that the results of the trial or guilty plea proceeding cannot be trusted. *Id.*

Under the performance prong, the reasonableness of an attorney's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. *Id.* at 690. The movant carries a heavy burden, as "reviewing courts must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance; that is, the [movant] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689. Indeed, the movant must show that "no competent counsel would have taken the action that his counsel did take." *Ford v. Hall*, 546 F.3d 1326, 1333 (11th Cir. 2008) (quoting *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir.2000)

(en banc)).

Under the prejudice prong, the movant must establish that there was a reasonable probability that the results would have been different but for counsel's deficient performance. *Kimmelman v. Morrison*, 477 U.S. 365, 375, (1986); *Strickland*, 466 U.S. at 696. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *see also Lightbourne v. Dugger*, 829 F.2d 1012, 1022 (11th Cir. 1987); *Boykins v. Wainwright*, 737 F.2d 1539, 1542 (11th Cir. 1983); *Willis v. United States*, 2009 WL 1765771 at * 2 (S.D. Ga. June 22, 2009).

Additionally, the Supreme Court has held that the same *Strickland* test applies to claims of ineffective assistance of counsel on direct appeal. *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Smith v. Murray*, 477 U.S. 527, 535-36 (1986). In *Jones v. Barnes*, 463 U.S. 745 (1983), however, the Court held that the Sixth Amendment does not require appellate advocates to raise every non-frivolous issue. Effective appellate counsel should "'winnow out' weaker arguments even though the weaker arguments may be meritorious." *Heath v. Jones*, 941 F.2d 1126, 1130-31

(11th Cir. 1991) (quoting and citing *Jones v. Barnes*, 463 U.S. at 751-52).

### i. Scope of the PSI

In Ground 2, Johnson contends that sentencing counsel performed deficiently by failing to attend the probation office's PSI interview and by failing to properly inform him of the scope of the PSI. (Doc. 1 at 5-6.) According to Johnson, Sugrue did not sit down and explain the PSI to him or give him an opportunity to explain any of the relevant conduct or criminal history calculations. (*Id.* at 6.) Moreover, counsel violated 18 U.S.C. § 3552(d) by delaying delivery of the PSI until a few days prior to sentencing, far short of the required 10 days. (*Id.*) Finally, counsel failed to file any objections to the PSI. (*Id.* at 5.)

At the outset, Johnson misstates the record. At sentencing, Johnson testified that he *had* reviewed the PSI with Sugrue:

> I'll ask you at this time, Mr. Johnson, have you had an opportunity to read and discuss the presentence report with your lawyer?
>
> MR. JOHNSON: Yes, sir.

(Cr. doc. 1016 at 4.) Moreover, the PSI suggests that Sugrue *was* present at the probation officer's interview. (PSI ¶ 17 ("[d]uring the interview with the probation officer, the defendant was advised by his attorney not

to make an oral statement; however, the defendant provided the following written statement regarding the offense conduct").) And Sugrue *did* file objections to the PSI. Specifically, Sugrue objected to the PSI's failure to give Johnson a minor role reduction. (PSI addendum at 1-2.) The probation officer disagreed with the objection, noting that Johnson was not "purchasing 'limited, user quantities'" of cocaine from Petty. (*Id.*) In addition to filing that objection, Sugrue submitted a separate sentencing memorandum asking the Court to reduce Johnson's offense level based upon the minor participant adjustment and to impose "a sentence sufficient, but not greater than necessary" to achieve the goals of sentencing. (Cr. doc. 855 at 1-4.) Sugrue persisted in raising those objections through sentencing. (Cr. doc. 1016 at 4-6; 7 (requesting lenience under § 3552 based upon Johnson's lack of education and drug problems).)

Lies and misstatements blossom forth from Johnson's affidavit like weeds in a garden. The Court simply does not credit any of his assertions regarding Sugrue's PSI performance. For that matter, Johnson has not pointed to any prejudice caused by Sugrue's alleged

deficient performance. That is, he has not pointed to any objection Sugrue should have filed that would have had any merit. And even if Sugrue *was* absent from the presentencing interview, it would not constitute deficient performance because the Sixth Amendment right to counsel does not apply to presentencing interviews by the Court's probation office. *See Okonkwo v. United States*, 2010 WL 1254333 at *10 (M.D. Ala. Mar. 5, 2010) (citing *United States v. Simpson*, 904 F.2d 607, 611 (11th Cir. 1990), which declined to address the issue but noted that three circuits have rejected it); *Williams v. United States*, 2009 WL 2486914 at *1 n.1 (S.D. Ga. Aug. 10, 2009) (collecting cases from the Third, Fourth, Fifth, Sixth, Seventh, Eighth, and Ninth Circuits declining to recognize a right to counsel at a presentence interview and stating that the "vast majority of other circuits to hear th[e] issue found no violation of the right to counsel where a probation office conducts a presentence interview outside the presences of counsel, especially if the probation office has taken no action to exclude counsel.") Nor did Sugrue render deficient performance by failing to deliver the PSI under 18 U.S.C. § 3552(d). Under that statute, the *court* has the duty of

delivering the PSI to "defendant, the counsel for the defendant, and the attorney for the Government at least ten days prior to the date set for sentencing." *Id.*

### ii.    Attributed drug amount

In Ground 3, Johnson contends that Sugrue performed deficiently by failing to object to the drug amount attributed to him at sentencing. (Doc. 1 at 6-9.) Specifically, he argues that Sugrue should have challenged the PSI's assertion that Johnson was responsible for 3.5 kilograms of cocaine. (*Id.* at 6.) According to Johnson, he should only be culpable for his own direct purchases not those of his codefendants since he was "incarcerated during 90% of the conspiracy existence." (*Id.* at 8.) Moreover, "he was merely an independent street level drug buyer and should not be held accountable for sharing the same common source of supply." (*Id.* at 9.)

The PSI held Johnson responsible for 3.06 kilograms of cocaine (not 3.5 kilograms). (PSI ¶ 20.) It reached the total amount not by coconspirator attribution, as Johnson suggests, but by holding him accountable only for the cocaine he had actually purchased or attempted

to purchase from Petty. Relying upon the half-kilogram Johnson requested from Petty prior to his arrest along with Petty's corroborated admission to Drug Enforcement Administration agents that Johnson had purchased 6 ounces of cocaine from him on about 15 occasions (90 ounces or about 2.55 kilograms), the probation officer assigned to the case concluded that Johnson should be held responsible for just over 3 kilograms of cocaine.[5] (PSI ¶¶ 14, 20.) The sentencing judge was permitted to credit such evidence. *See United States v. Rodriguez*, 398 F.3d 1291, 1296-97 (11th Cir. 2005) (a court may base its drug attribution calculations based upon coconspirator corroborated estimates of the number of times the defendant transported drugs and the amount of drugs transported each time); *see also United States v. Frazier*, 89 F.3d 1501, 1506 (11th Cir. 1996) ("a court may base its computation on

---

[5] Johnson suggests that reliance upon unverified telephone conversations to establish the total attributable drug amount was improper. (Doc. 1 at 9 n.3.) He points to no evidentiary reason for exclusion, however, and the sentencing judge need only find the amount based upon the preponderance of the evidence standard. *United States v. Smiley*, 263 F. App'x 765, 770 (11th Cir. 2008) (quoting *United States v. Mellerson*, 145 F.3d 1255, 1258 (11th Cir. 1998)); *United States v. Rodriguez*, 398 F.3d 1291, 1296 (11th Cir. 2005). Here the judge relied upon the telephone calls, Petty's interviews, *and* Johnson's own failure to object to the factual findings in the PSI. (Cr. doc. 1016 at 6, 8.) Simply put, there was more than enough evidence for the sentencing judge to find by a preponderance of the evidence that Johnson should be accountable for 3.06 kilograms of cocaine.

evidence showing the average frequency and amount of a defendant's drug sales over a given period of time"). Since the PSI calculated the total drug amount based solely upon Johnson's direct purchases, Sugrue had no reason to object to the total drug amount based upon coconspirator attribution. Hence, Johnson's claim fails.

### iii. 18 U.S.C. § 3553(a)

In Ground 1, Johnson states that counsel was ineffective for failing to raise on appeal the sentencing judge's failure to properly consider the § 3553(a) sentencing factors. (Doc. 1 at 3-4.) Specifically, he argues that the sentence did not avoid unwarranted sentencing disparities since he was sentenced more harshly than several of his codefendants.[6] (*Id.*)

As explained by the Eleventh Circuit:

> After [*United States v. Booker*, 543 U.S. 220 (2005)], a sentence may be reviewed for procedural or substantive unreasonableness. A sentence may be unreasonable if it is the product of a procedure that does not follow *Booker*'s requirements, regardless of the actual sentence. Additionally, a sentence may be substantively unreasonable, regardless of the procedure used.

---

[6] While he frames this as one of many arguments he could raise under § 3553(a), it is the only § 3553(a) argument he actually *has* raised. Despite the invitation, Johnson is the master of his § 2255 motion and the Court will not raise arguments for him.

*United States v. Hunt*, 459 F.3d 1180, 1182 n.3 (11th Cir. 2006) (cited in

*United States v. Docampo*, 573 F.3d 1091, 1100 (11th Cir. 2009)). Here,

Johnson does not suggest in his motion that Sugrue should have

challenged the sentencing judge's procedures but instead claims that

Sugrue was ineffective for failing to raise the substantive claim that the

sentence was unreasonable when contrasted with the less severe

sentences that certain other coconspirators received.[7] (Doc. 1 at 3-4.) In

order to prove deficient performance in this context, Johnson must show

that "the defendants who received less severe sentences were . . .

similarly situated" to him in that they had similar records and were

found guilty of similar conduct. *Docampo*, 573 F.3d at 1101. He has not.

---

[7] He argues in his "traverse" to the government's response, however, that the court failed to recite the factor, which constitutes procedural unreasonableness. (Doc. 4 at 4.) The claim is meritless. The sentencing judge, after considering Johnson's arguments, "considered the factors set forth in 18 United States Code, Section 3553(a)" prior to entering sentence. (Cr. doc. 1016 at 8.) Although he did not explicitly list the disparity factor at that time, the Eleventh Circuit "has held that 'nothing in *Booker* or elsewhere requires the district court to state on the record that it has explicitly considered *each* of the § 3553(a) factors or to discuss *each* of the § 3553(a) factors.'" *Docampo*, 573 F.3d 1091, 1107 (emphasis in original) (quoting *United States v. Scott*, 426 F.3d 1324, 1329 (11th Cir. 2005)). Instead, it has held "that an 'acknowledgement by the district court that it has considered the defendant's arguments and the factors in section 3553(a) is sufficient under *Booker*.'" *Id.* (quoting *United States v. Talley*, 431 F.3d 784, 786 (11th Cir. 2005)).

Out of the 45 total defendants in this case, Johnson points only to the sentences received by Jamerson Smalls, Charles Collins, Shantay Banks, Tyrone Fields, Orlando Clark, Percell Ellison, Jr., Oran Petty, Keith Futch, Thomas Johnson, and Anderson Holmes III. (Doc. 1 at 4.) Smalls (22 years, but participated throughout the conspiracy), Collins (12.5 years), Shantay Banks (11 years), and Fields (11 years) were not far off movant's 142 month sentence. (*Id.* at 1.) The rest, however, received substantially shorter sentences, and Johnson claims that because he "entered into the conspiracy at the end and his term of imprisonment is 200% higher than other sentences imposed it smacks of the type of sentencing disparity that the statute (3553) seeks to prevent against." (*Id.* at 4.)

Looking to the coconspirators who received shorter sentences, Orlando Clark had a criminal history category of I, whereas Johnson was category VI. (Clark PSI ¶ 33 ("zero criminal history points establish a criminal history of I"); *see* Johnson PSI ¶ 45.) Additionally, the government moved for a downward departure for Clark due to his substantial assistance in the prosecution of others. (Cr. doc. 845.) Like

Clark, Percell Ellison, Jr. also had a lower criminal history level. (Doc. 3 at 19; Ellison PSI ¶ 38; *see* cr. docs. 863 & 871.) Oran Petty had a lower total offense level and pled guilty to a different charge -- one that carried a maximum statutory penalty of only four years' imprisonment. (Petty PSI at 1; *id.* ¶ 29; cr. doc. 920.) Keith Futch pled guilty to a different charge as well. He pled to two counts which, when combined, maxed out at 8 years' imprisonment. (Futch PSI ¶ 28; cr. docs. 901, 906, & 915.) Thomas Johnson had lower total offense and criminal history levels. (Johnson PSI ¶¶ 28 & 36; *see* cr. docs. 611, 617, & 620.) Finally, Anderson Holmes had lower total offense and criminal history levels. (Holmes PSI ¶¶ 29 & 38; *see* cr. docs. 857, 867, & 879.)

Because the defendants were not comparable, Johnson's sentencing disparity claim was weak at best, so Sugrue did not render deficient performance by failing to raise the claim on appeal. Indeed, it was his duty to winnow out such arguments. *Heath*, 941 F.2d at 1130-31.


## III.  CONCLUSION

For the foregoing reasons, Johnson's § 2255 motion (doc. 1) should

be **DENIED**. Applying the Certificate of Appealability ("COA") standards, which are set forth in *Brown v. United States*, 2009 WL 307872 at * 1-2 (S.D. Ga. Feb. 9, 2009) (unpublished), the Court discerns no COA-worthy issues at this stage of the litigation, so no COA should issue. 28 U.S.C. § 2253(c)(1); *see Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (approving sua sponte denial of COA before movant filed a notice of appeal). And since there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith. Thus, *in forma pauperis* status on appeal should likewise be **DENIED**. 28 U.S.C. § 1915(a)(3).

 **SO REPORTED AND RECOMMENDED** this <u> 3rd </u> day of March, 2011.

<u>UNITED STATES MAGISTRATE JUDGE</u>
**SOUTHERN DISTRICT of GEORGIA**